## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LATASHA JONES,** | § | |
| **Individually and on behalf of all** | § | |
| **those similarly situated,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **C.A. NO. H-06-cv-2723** |
| | § | **(JURY DEMANDED)** |
| **GLOBAL PAYDAY LOANS, LLC,** | § | |
| **d/b/a Cashnet, Cashnet 500, and Cash** | § | |
| **Net 500 Financial; CERTIFIED** | § | |
| **RECOVERY SYSTEMS, LLC,** | § | |
| **d/b/a CRSI; BILLY JAYNES;** | § | |
| **MELANIE ROBINSON; and LAWREN** | § | |
| **TAYLOR,** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, LATASHA JONES, Individually and on behalf of all those similarly situated, (hereinafter referred to as "Jones" or the "Plaintiff") Plaintiff in the above styled case, and makes this her Plaintiff's Original Complaint against GLOBAL PAYDAY LOANS, LLC, d/b/a Cashnet, Cashnet 500, and Cash Net 500 Financial ("Global"), CERTIFIED RECOVERY SYSTEMS, INC., d/b/a CRSI ("CRS"), BILLY JAYNES ("Jaynes"), MELANIE ROBINSON ("Robinson"), and LAWREN TAYLOR ("Taylor")(Global, CRS, Jaynes, Robinson, and Taylor hereinafter collectively referred to as the "Defendants") and

for cause of action would show as follows:

## I.

## Parties

1. At all pertinent times the Plaintiff was and is a natural person and domiciliary of Missouri City, Texas.

2. Defendant Global Payday Loans, LLC, is a Utah limited liability company doing business in the State of Texas, doing business as Cashnet, Cashnet 500, and Cash Net 500 Financial, and may be served by serving its President, Melanie Robinson, at its registered address located at 4001 South 700 East, Suite 500, Salt Lake City, UT 84107, at 309 Old York Road, Suite 200, Jenkintown, PA 19046, or wherever she may be found, pursuant to Tex. Bus. Org. Code, § 5.255(1).

3. Defendant Certified Recovery Systems, LLC is a Texas limited liability company with its principal places of business in the State of Texas and doing business in the State of Texas, and may be served by serving its managing member, Billy Jaynes, at its principal place of business located at 6161 Savoy, Suite 600, Houston, Texas 77036, or wherever she may be found, pursuant to Tex. Bus. Org. Code, § 5.255(3).

4. Defendant Billy Jaynes is an individual residing and doing business in the State of Texas and may be served by serving her at her principal place of

business located at 6161 Savoy, Suite 600, Houston, Texas 77036, or wherever she may be found.

5. Defendant Melanie Robinson is an individual residing in the State of Utah and doing business in the State of Texas and may be served by serving her at her principal place of business located at 4001 South 700 East, Suite 500, Salt Lake City, UT 84107, or wherever she may be found.

6. Defendant Lawren Taylor is an individual residing in the State of Utah and doing business in the State of Texas and may be served by serving her at 4001 South 700 East, Suite 500, Salt Lake City, UT 84107, or wherever she may be found.

## II.

## <u>Jurisdiction and Venue</u>

7. This Court has jurisdiction under 28 U.S.C. § 1331 in that this civil action arises under the laws of the United States, in particular under the provisions of the "Fair Debt Collection Practices Act" codified at 15 U.S.C. §§ 1692, *et seq.*, and the "Racketeer Influenced and Corrupt Organizations Act" codified at 18 U.S.C. §§ 1961, *et seq.* ("RICO"). This Court also has jurisdiction under 28 U.S.C. § 1337(a).

8. The Defendants are also liable to the Plaintiff pursuant to the laws of the State of Texas, which claims may be brought under the supplemental and ancillary jurisdiction of this Court.

9. This Court has personal jurisdiction over the Defendants because they operated in Texas, solicited and made loans to Texas residents in Texas, and conducted the collection acts that are the grounds of this suit in Texas. The Defendants have established minimum contacts in the State of Texas.

10. This Court has venue under 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas.

## III.

## Background Facts

11. On or about July 22, 2005, Ms. Jones applied on-line with Global for a loan in the amount of $350.00. On the day of the loan, Global charged a $105.00 finance charge and began calculating interest on the total amount of $455.00, although $350.00 was actually loaned to Ms. Jones. The $105.00 finance charge itself amounted to interest at a rate of 391.07% per annum. The loan was payable in just under 30 days, making the effective interest rate far higher than the 391.07%. Ms. Jones spoke with an employee of Global over the telephone before obtaining the loan and the Global employee represented to Ms.

Jones that in the event that she was unable to repay the full amount of the loan within the 30-day period, she could simply make "interest only" payments of $105.00 every 2 weeks until such time that she could pay the principle amount of $350.00 in full.

12. Although the loan agreement was termed "unsecured," Global made Ms. Jones sign an "Irrevocable Assignment of Wages" form purporting to assign her wages to Global.  Ms. Jones was unable to pay the balance of the loan within the prescribed time period.  She experienced an illness and could not work from August through September.  Ms. Jones did not hear from Global until December of 2005 when a representative of Global named John Wolf called her about payment on the loan.  Ms. Jones stated that she could pay $50.00 immediately.  Mr. Wolf said that he would call her after he received her $50.00 payment and would set up a monthly payment plan arrangement.

13. Ms. Jones received no communication from Mr. Wolf or anyone else at Global after she sent a $50.00 payment by Western Union to Global.

14. In late January of 2006, a Global employee called Ms. Jones demanding a payment.  The representative told Ms. Jones that she could pay the sum of $150.00 every 2 weeks until she was able to repay the $350.00 principle on the loan.  On February 1, 2006, Ms. Jones sent a $150.00 payment by Western Union to Global.  In mid-February of 2006, Ms. Jones lost her job, and except for a brief job

opportunity in March, was out of work until last week.

15. Beginning in July of 2006, Ms. Jones began receiving calls from CRS regarding the past-due balance on her loan.   CRS told Ms. Jones that she had 48 hours to pay the balance of her loan or the the District Attorney's office would continue prosecution against her.  Ms. Jones explained to the CRS employee that she did not have sufficient funds to pay the debt at that time.  After that telephone call, CRS began calling Ms. Jones's grandmother, Barbara Ranier, who is 84 years old, and told her that Ms. Jones was refusing to pay her loan and that CRS was going to have her picked up for the refusal to pay.  CRS representatives also called Ms. Jones's mother and told her the same.

16. Ms. Jones was frightened by the prospect of being arrested and taken to jail for her failure to pay a debt.  She called both the Fort Bend County and the Harris County District Attorney's offices to inquire about the charges.  She was told that there were no charges pending against her.  Fearing criminal prosecution, Ms. Jones hired counsel to represent her with respect to the debt.  A representative telephoned Ms. Jones in early August of 2006 and left a message on her voicemail disclosing information about the nature of the call.  The CRS representative stated that "it has become obvious to me that you don't have any intentions of resolving this matter voluntarily."   The representative then stated that she would "take it upon herself to schedule the matter for further processing."   The representative

then accused Ms. Jones of listening to her message and not picking up the receiver stating that Ms. Jones should "come from behind the answering machine" and pick up the phone to talk to her about the matter. When Ms. Jones called CRS back as the message asked that she do, she told the representative that she had an attorney and that CRS would need to contact her attorney regarding the matter.

17. Several days later, Ms. Jones received multiple telephone calls from CRS without any messages left. Ms. Jones saw the telephone number on her caller ID and returned the calls to CRS. The representative that she spoke with at CRS told her that no one had called, that CRS documents all of their calls, that there was no documentation of any calls having been made and therefore, no calls had been made. Ms. Jones told the representative that not only did she have an attorney but that her attorney had telephoned CRS the day before CRS called. The CRS representative told Ms. Jones that no one, including her attorney, had called CRS the day before. The CRS representative then asked Ms. Jones what she planned on doing about the debt. Ms. Jones told her there was nothing she could do about the debt at that time. The CRS representative then hung-up on Ms. Jones.

## IV.

## The Class and Class Claims

18. The Plaintiff brings her usury claims individually and on behalf of all persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil

Procedure against Global only. The Plaintiff seeks to represent a plaintiff class defined as follows:

> All persons: (i) residing in the State of Texas (ii) who applied for and obtained a loan from Global over the internet using the website www.cashnet500.com (iii) who were charged a finance charge of $105 per $350 loaned plus additional interest on the balance due (vi) during the time period from August 22, 2004, through the date of entry of an order certifying the class.

19.    The Class is so numerous that joinder of all Class Members is impracticable. There are common questions of law and fact affecting the rights of class members who suffered damage due to the conduct of Global described herein. The common questions of law are whether Global violated the Texas Finance Code, §§ 341.001, *et seq* by: (a) making, arranging, or negotiating a loan without being authorized to perform the act or offer the service as a credit service organization under Chapter 393 of the Texas Finance Code, (b) using a device, subterfuge or pretense to evade the application of Tex. Fin. Code, § 342.051, and (c) contracting for, charging, or receiving interest or time price differential greater than the amount authorized in violation of Tex. Fin. Code, §§ 342.201(a).

20.These common questions of law arise from the conduct of Global creating a system of taking online loan applications from Texas applicants without a license to do so in Texas, and then contracting for, charging, or

receiving interest or time price differential greater than the amount authorized. This also constitutes a common question of fact.

21. The Plaintiff's claims are typical of the claims of Class Members and Global's defenses to the Plaintiff's claims, to the extent that Global has any, are expected to be typical of the defenses to the claims of other class members. Indeed, the Plaintiff's claims have the same essential characteristics as the claims of the Class as a whole and are based upon identical legal theories. The Class Members have suffered the same injury and possess the same interests as the Plaintiff.

22. The Plaintiff as a representative party will fairly and adequately protect the interests of the class. The Plaintiff has retained qualified, experienced, and able counsel to represent the Class, has no conflicts of interest with the Class, and brings this suit specifically for the protection of the Class Members who have been victimized and damaged by Global's usurious loan practices, and not solely to recover her own personal damages.

23. Global's conduct with respect to the Plaintiff is and has been generally applicable to the Class Members, thereby causing damages to the Class as a whole.

24. The prosecution of separate suits by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual members of the class that would establish incompatible standards of

conduct for the party opposing the class.  To avoid this result, this suit should be maintained as a class action.

25. The prosecution of separate suits by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  To avoid this result, this suit should be maintained as a class action.

26. The Plaintiff believes this Court will find that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## **Texas Usury Claims**

27. The transaction giving rise to these claims was a "loan" as defined in Tex. Fin. Code, § 341.001(9), because the transaction was a deferred presentment transaction as defined in Tex. Fin. Code, § 341.001(6).  The loan provided for interest in excess of 10 percent a year, was extended primarily for personal, family or household uses, was made by a person engaged in the business of making, arranging, or negotiating those types of loans, and was not secured by a lien on real property, and thus was subject to Chapter 342 of the Texas Finance Code.

## A.  Violations of Tex. Fin. Code, § 341.404

28.    Global performed acts, including advertising, or offered a service that caused the Plaintiff and the class members to believe that it was offering to make, arrange, or negotiate a loan without being authorized to perform the act or offer the service as a credit service organization under Chapter 393 of the Texas Finance Code, a pawnbroker under Chapter 371 of the Texas Finance Code, or an authorized lender, all in violation of Tex. Fin. Code, § 341.404.

29. Global's conduct was the direct cause of damages to the Plaintiff and the class members in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff and the class members now sue, including but not limited to an amount that does not exceed an amount equal to (i) three times the actual economic loss to the Plaintiff that resulted from the violations; or (ii) twice the interest or time price differential contracted for, charged, or received not to exceed $2,000, pursuant to Tex. Fin. Code, § 349.003(a).

## B.  Violations of Tex. Fin. Code, § 342.051

30. Global was required to obtain a license to engage in its lending activities under Tex. Fin. Code, § 342.051(a), but did not do so.  In addition, Global used a device, subterfuge or pretense to evade the application of Tex. Fin. Code, § 342.051 in violation of §§ 342.008 and 342.051(b).  These violations were

material, induced the Plaintiff and the class members to enter into the loan transaction with Global, and the Plaintiff and class members would not have entered into the loan transaction if the violations had not occurred.

31. Global's conduct was the direct cause of damages to the Plaintiff and the class members in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff and the class members now sue, including but not limited to an amount that does not exceed an amount equal to (i) three times the actual economic loss to the Plaintiff and class members that resulted from the violations; or (ii) twice the interest or time price differential contracted for, charged, or received not to exceed $2,000, pursuant to Tex. Fin. Code, § 349.003(a).

### C.  Violations of Tex. Fin. Code, §§ 342.201 342.203, and 342.502

32. Global charged interest in excess of the maximum interest charge allowed, by contracting for, charging, or receiving interest or time price differential and/or finance charges and administrative fees greater than the amount authorized in violation of Tex. Fin. Code, §§ 342.201(a), 342.201(f), 342.203, and 342.502(a).

33. Global's conduct was the direct cause of damages to the Plaintiff and the class members in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff and the class members now sue, including but not limited to an amount equal to twice the amount of the interest or time price differential contracted for, charged, or received and reasonable attorney's fee set by the Court,

pursuant to Tex. Fin. Code, § 349.001(a).     Additionally and alternatively, Global contracted for, charged, or received interest or time price differential that exceeded twice the total amount of interest or time price differential authorized.  Pursuant to Tex. Fin. Code, § 349.002(a), Global is liable to the Plaintiff and the class members for all principal or the principal balance, as well as all interest or time price differential, plus attorney's fees incurred to enforce § 349.002.

**V.**

**Jones' Individual Claims**

**RICO Claims**

34. The Defendants are persons as defined by 18 U.S.C. § 1961(3) and are an "enterprise" as defined by 18 U.S.C. § 1961(4).

35. Global lent money to the Plaintiff at a rate that was usurious under Texas law and the usurious rate of these loans was at least twice the enforceable rate, making the debts "unlawful debts" as defined under 18 U.S.C. § 1961(6).

36. The Defendants engaged in activity that constituted "racketeering activity" as defined under 18 U.S.C. § 1961(1).  Specifically:

(a) Global made extortionate extensions of credit to the Plaintiff and the class members in violation of 18 U.S.C. § 892, by making loans to the Plaintiff and the class members that were not enforceable in Texas and that were at a rate of interest for in excess of an annual rate of 45 per centum.

(b) The Defendants participated in or conspired to participate in the use of extortionate means to collect or attempt to collect the extensions of credit to the Plaintiff and the class members in violation of 18 U.S.C.

§ 894 by making threats of arrest that were unlawful and impossible.

(c) The Defendants knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a).

37. The Defendants have received income derived, directly and/or indirectly, from a pattern of racketeering activity and/or through collection of unlawful debts in which the Defendants have participated as principals within the meaning of 18 U.S.C. § 2, and the Defendants have used or invested, directly and/or indirectly, a part of that income or the proceeds of that income in the establishment and/or operation of an enterprise which is engaged in interstate commerce. In particular, the Defendants have taken the income derived from the activities of CRS and Global and have used or invested part of the income in the operation of CRS and Global in interstate commerce. This constitutes a violation of 18 U.S.C. § 1962(a).

38. The Defendants have participated, directly and/or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt in violation of 18 U.S.C. § 1962(c).

39. The Defendants, who are persons employed by or associated with the enterprise and have conspired to violate subsection (a) and (c) of section 1962 of title 18 of the United States Code, in violation of 18 U.S.C. § 1962(d). In particular, the Defendants agreed to charge exceedingly usurious interest rates and agreed to collect these unlawful debts through extortionate practices.

40. The Defendants are liable to the Plaintiff and the class for an amount equal to three times the damages sustained and costs of the suit including a reasonable attorney's fee.  In addition, the Plaintiff seeks the issuance of appropriate orders, including but not limited to an order divesting the shareholders from their interests in Global and CRS, an order imposing reasonable restrictions on the future activities of Global and CRS and prohibiting loans of the same type as those complained of in this suit and/or unlawful collection of those loans, and an order dissolving Global and CRS, liquidating their assets, and disbursing the proceeds of the liquidation to the Plaintiff in compensation of damages that may be awarded.

### FDCPA Claims

41. The Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3).  CRS is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

### A. Communication with Third Parties

42. CRS violated 15 U.S.C. § 1692c(b) by communicating with a person other than the Plaintiff, in particular, the Plaintiff's grandmother and mother, about the debt.  CRS disclosed information about the Plaintiff's debt and told these third persons that it would "pick up" Ms. Jones if she did not pay the debt immediately.

43. CRS's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

<u>B. Harassment or Abuse:  15 U.S.C. § 1692d</u>

44. CRS engaged in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff in violation of 15 U.S.C. § 1692d.  In particular, CRS threatened use of violence or other criminal means in connection with its collection of the debt by telling the Plaintiff that the DA was prosecuting Ms. Jones and that it would have her picked up and arrested if she did not pay the debt within 48 hours.  This constituted a violation of 15 U.S.C. § 1692d(1).  In addition, CRS caused the Plaintiff's telephone to ring or engaged the Plaintiff, her grandmother, and her mother in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.  This constituted a violation of 15 U.S.C. § 1692d(5).

45. CRS's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

<u>C. False or Misleading Representations:  15 U.S.C. § 1692e</u>

46. CRS used false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e as follows:

     a. Making the false representation or implication that CRS is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof in violation of 15 U.S.C. § 1692e(1).

     b. Making the false representation of the character and legal status of the debt and the false representation of the services rendered by the debt collector in violation of subsection (2)(A).

     c. Making threats to take legal actions against the Plaintiff that could not legally be taken by CRS or that were not intended to be taken by the Defendant in violation of subsection (5).

     d. Making the false representation or implication that the Plaintiff committed any crime or other conduct in order to disgrace the Plaintiff in violation of subsection (7).

     e. Using false representations or deceptive means to collect or attempt to collect the debt from the Plaintiff in violation of subsection (10). Specifically, CRS represented to the Plaintiff that: (i) the DA was prosecuting Ms. Jones and, (ii) CRS would "pick her up" and have her arrested if she did not pay the debt within 48 hours. These were all false representations made to strong-arm the Plaintiff into paying the debt.

     f. Failing to disclose in the initial communication with the Plaintiff that CRS was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11).

47. CRS's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

<u>D. Validation of Debts: 15 U.S.C. § 1692g(a)</u>

48.CRS violated 15 U.S.C. § 1692g(a) by failing to send the Plaintiff the required written notice about the debt owed within five days after the initial communication with the Plaintiff.

49.CRS's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

### E. Statutory Damages under 15 U.S.C. §1692k(a)(2)(A)

50.As a result of CRS's violations, and in addition to her actual damages as prayed for above, the Plaintiff is entitled to an award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

### F. Costs of Litigation and Attorney's Fees

51.The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on their behalf.  The Plaintiff seeks an award of her costs of this action, including but not limited to reasonable attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3).

## **Texas Collection Act Claims**

52. Global's and CRS's conduct constitutes violations of the Texas Collection Practices Act, codified in the Texas Finance Code. The Plaintiff is a consumer as that term is defined by Tex. Fin. Code, § 392.001(1). Global and CRS are debt collectors as that term is defined by Tex. Fin. Code, § 392.001(6).

### A. Threats or Coercion:  Tex. Fin. Code, § 392.301

53. Global's and CRS's actions and conduct constitute violations of Texas Finance Code, § 392.301, as follows:

    a. Using or threatening to use violence or other criminal means to cause harm to the Plaintiff in violation of section 392.301(a)(1) of the Texas Finance Code.

    b. Falsely accusing a person of a crime in violation of section 392.301(a)(2) of the Texas Finance Code.

    c. Threatening that the debtor will be arrested for nonpayment of debt without proper court proceedings in violation of section 392.301(a)(5) of the Texas Finance Code.

    d. Threatening to file a charge, complaint, or criminal action against a debtor when the debtor has not violated a criminal law in violation of section 392.301(a)(6) of the Texas Finance Code.

    e. Threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings in violation of Section 392.301(a)(7).

    f. Threatening to take an action prohibited by law in violation of Section 392.301(a)(8).  Specifically, threatening to have the Plaintiff "picked up" and arrested and prosecuted by the DA for failure to pay the debt.

54. Global's and CRS's conduct was the direct cause of damages to the Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which the Plaintiff now sues.

<u>B. Fraudulent, Deceptive, or Misleading Representations:</u>
<u>Tex. Fin. Code, § 392.304</u>

55. Global's and CRS's actions and conduct constitute violations of Texas

Finance Code, § 392.304, as follows:

a. Misrepresenting the character, extent, or amount of the Plaintiff's consumer debt, or misrepresenting the Plaintiff's consumer debt's status in a judicial or governmental proceeding in violation of section 392.304(a)(8) of the Texas Finance Code.
b. Representing falsely that a debt collector is vouched for, bonded by, or affiliated with, or is an instrumentality, agent, or official of, the State of Texas or an agency of federal, state, or local government in violation of section 392.304(a)(9) of the Texas Finance Code.
c. Representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business in violation of section 392.304(a)(14) of the Texas Finance Code.
d. Using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer in violation of section 392.304(19) of the Texas Finance Code.

56. Global's and CRS's conduct was the direct cause of damages to the

Plaintiff in an amount in excess of the jurisdictional limits of the Court, for which

the Plaintiff now sues.

<u>C. Costs of Litigation and Attorney's Fees</u>

57. The Plaintiff has been forced to hire the attorneys whose names appear

below to pursue those claims on their behalf. The Plaintiff seeks an award of her

costs of this action, including but not limited to reasonable attorneys' fees pursuant

to Tex. Fin. Code, § 392.403(b).

## Texas DTPA Claims

58. Global's and CRS's actions, by violating the Texas Finance Code at § 392.101 *et seq*., constitute violations of the Texas Deceptive Trade Practices Act, including but not limited to Subchapter E, Chapter 17 of the Tex. Bus. & Comm. Code pursuant to Tex. Fin. Code § 392.404.

59. By the time of service of summons of this case or answer of the Defendant, the Plaintiff will have given the Defendants 60 days' written notice of these DTPA claims, pursuant to §17.505(b) and §17.506 of the Tex. Bus. & Comm. Code.

60. As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of this Court, including, without limitation, economic and mental anguish damages.

61. The unlawful acts and practices described above were committed knowingly and/or intentionally by the Defendants. Therefore, pursuant to the DTPA Section 17.50, the Plaintiff is entitled to an award of exemplary damages.

62. The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on her behalf. The Plaintiff also seek to recover her reasonable and necessary attorneys' fees pursuant to the Texas Deceptive Trade Practices Act.

## State Common Law Claims

### A. Intentional Infliction of Emotional Distress

63. Global's and CRS's conduct constitutes intentional infliction of emotional distress. Global and CRS made calls representing it was prosecuting criminal charges against the Plaintiff and have the Plaintiff arrested for her nonpayment of the debt. Global's and CRS's actions and threats were all calculated at intentionally inflicting emotional distress upon the Plaintiff so that she would pay the debt in order to make the calls stop. Global's and CRS's actions in doing this were intentional or reckless, their conduct was extreme and outrageous, their actions caused the Plaintiff emotional distress and the Plaintiff's resulting emotional distress was severe.

64. As a direct and proximate result of the acts of Global and CRS, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court. Moreover, Global's and CRS's actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

### B. Invasion of Privacy by Way of Intrusion

65. Global's and CRS's conduct constitutes an invasion of the Plaintiff's privacy by way of intrusion, in that Global and CRS intentionally intruded upon the solitude of the Plaintiff or her private affairs in a way that was or would have

been highly offensive to a reasonable person.  This intrusion was unreasonable, unjustified, or unwarranted.

66. As a direct and proximate result of these acts, the Plaintiff has been damaged in a sum in excess of the minimum jurisdictional limits of the court. Moreover, Global's and CRS's actions were intentional or reckless, and the Plaintiff hereby sues for exemplary damages in an amount far in excess of the minimal jurisdictional limits of this Court.

## VI.

## Jury Demand

67. The Plaintiff demands a trial by jury on all issues in this case.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, LATASHA JONES, Individually and on behalf of all those similarly situated, respectfully requests that the Defendants, GLOBAL PAYDAY LOANS, LLC, d/b/a Cashnet, Cashnet 500, and Cash Net 500 Financial, CERTIFIED RECOVERY SYSTEMS, INC., d/b/a CRSI, BILLY JAYNES, MELANIE ROBINSON, and LAWREN TAYLOR, be cited to appear, and that after trial to a jury the Plaintiff be awarded judgment against the Defendants, jointly and severally, for the following:

1. Actual damages against Defendants;

2. Additional, punitive, or exemplary damages against Defendants;

3. Statutory damages against CRS not to exceed $1,000.00;

4.      Prejudgment and post judgment interest as allowed by law;

5.      Reasonable and necessary attorney's fees;

6.      Costs of Court; and

7.      Such other relief, both equitable and at law, to which the Plaintiff may

show herself entitled.

Respectfully submitted,

**WAUSON ♦ PROBUS**

By:__/s/  Matthew B. Probus____
     **Matthew B. Probus**
     TBA# 16341200

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303
(281) 242-0306  (Facsimile)

*ATTORNEYS FOR PLAINTIFF,*
*LATASHA JONES, Individually and*
*on behalf of all those similarly situated*